**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**MARY SORRENTINI,**

      **Plaintiff,**

**vs.**                          **CASE NO. 4:20-CV-160-MAF**

**ANDREW SAUL, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,**

      **Defendant.**
_____/

**<u>MEMORANDUM OPINION AND ORDER</u>**

This Social Security case was referred to the Undersigned upon consent of the parties, ECF No. 11, by United States District Judge, Allen C. Winsor. It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act. After careful consideration of the record, the decision of the Commissioner is AFFIRMED.

**I.**    **Procedural History**

On **February 11, 2016**, Plaintiff, Mary Sorrentini, filed an application for a period of disability benefits, alleging disability beginning on June 1,

1993. Tr. 71, 76. Plaintiff also filed an application for supplemental security income. The claims were denied on April 26, 2016, and upon reconsideration on August 4, 2016. Tr. 71, 76, 105-10, 113-25.

At Plaintiff's request, Administrative Law Judge, Sylvia H. Alonso, held a hearing, on January 23, 2019, in Fort Lauderdale, Florida. Tr. 36-52. There, Plaintiff was represented by Ian Lloyd, Esq. Tr. 36, 38. Plaintiff and Mark Caso, an impartial vocational expert (VE) testified at the hearing. Tr. 41-48 (Plaintiff's testimony); 48-50 (Caso's testimony); 265-67 (Caso's Resume). Also, during the hearing, the ALJ admitted medical records and other exhibits relating to Plaintiff's claims. Tr. 39. Because there was "insufficient evidence to show that [Plaintiff was] disabled," Plaintiff's counsel withdrew the prior claim and conceded to "an onset date of the filing date . . . [of] February 11, 2016." Tr. 40. The ALJ considered the entire record including Plaintiff's medical records; opinion evidence; Plaintiff's testimony, which the ALJ found "not entirely consistent with the medical evidence and other evidence in the record"; and the testimony of the VE. Tr. 25-30. The ALJ issued a decision on February 21, 2019, denying Plaintiff's application for benefits. Tr. 22-31.

Plaintiff requested review from the Appeals Council on April 10, 2019. Tr. 173-74, 269-70. On January 24, 2020, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. Tr. 1-3.

Plaintiff filed her Complaint with this Court on March 30, 2020. ECF No. 1.

Defendant filed an Answer on August 7, 2020. ECF No. 15. The parties filed

memoranda of law, which have been considered. ECF Nos. 18, 19.

## II.   Plaintiff's Claims

Plaintiff raises two claims:

1. Whether substantial evidence supports the ALJ's discounting the opinion of Plaintiff's treating physician regarding residual functional capacity (RFC). ECF No. 18, p. 1-5.

2. Whether substantial evidence supports the ALJ's discounting the opinion of the consultative examining physician regarding Plaintiff's RFC. Id., p. 1, 5-7.

Plaintiff alleges that the ALJ disregarded the opinions based on a lack

of complaints of back pain after December 2016 without considering that she

was not able to obtain treatment to provide relief for the back pain. ECF No.

1, p. 2. Plaintiff claims that the record should have been further developed

because "there . . . [were] no doctor's visits in the record after December

2016." Id., p. 2. According to Plaintiff, the ALJ should have afforded

"controlling weight" or "substantial weight" to Plaintiff's orthopedic specialist,

rather than "disregarding" it, where it was supported by medically acceptable

techniques and consistent with other substantial record evidence. Id.; ECF

No. 18, p. 3. Plaintiff argues that even if "substantial evidence exists," the

ALJ did not "clearly articulate the reasons for giving less weight" to Dr.

Brodsky's opinion. <u>Id</u>., p. 4. Similarly, Plaintiff claims that the ALJ did not clearly articulate her findings to support her "discounting" Dr. Gonzalez's consultative opinion. <u>Id</u>., p. 5-6.

The Commissioner argues that there is substantial evidence to support the ALJ's decision to give the consultative examiner's opinion only partial weight and to discount the treating physician's opinion because it "was inconsistent with the overall record evidence," including Plaintiff's own report that "she was independent in all basic activities of daily living and able to drive"; and the ALJ "properly evaluated the medical opinions in accordance with applicable legal standards." ECF No. 19, pp. 10, 12-14. According to the Commissioner, the ALJ correctly determined that Plaintiff was not disabled because she could "perform light work with limitations." <u>Id</u>., p. 10.

## III.   Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1986). This Court must affirm the decision if it is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1221 (11th Cir. 2002); <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would

accept as adequate to support a conclusion." <u>Bloodsworth</u>, 703 at 1239 (citations omitted); <u>accord</u> <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005).[1]

The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, <u>Bloodsworth</u>, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992). Review is deferential, but the reviewing court conducts what has been referred to as "an independent review of the record." <u>Flynn v. Heckler</u>, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

---

[1] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement); Barnhart v. Walton, 535 U.S. 212, 223-224 (2002). In addition, an individual is entitled to disability insurance benefits (DIB) if she is under a disability prior to the expiration of his insured status. See 42 U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211.

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[2]

---

[2] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records. Id. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "residual functional

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work

_____

capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered her decision. See generally Bagliere v. Colvin, No. 1:16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), adopted, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

suggested by the Commissioner. <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of his claim. *See* 20 C.F.R. § 404.1512(a); <u>Moore</u>, 405 F.3d at 1211. The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ. <u>See</u> <u>Battle v. Astrue</u>, 243 F. App'x 514, 523 (11th Cir. 2007).

As the finder of fact, the ALJ is charged with the duty to evaluate all the medical opinions of the record and resolve conflicts that might appear. 20 C.F.R. § 404.1527. When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, such as "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist and, if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors. 20 C.F.R. § 404.1527(b) & (c)(1)-(6).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). Further, the ALJ must give a treating physician's opinion "substantial or considerable weight" absent "good cause." Id. (quotation marks omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). "This requires a relationship of both duration and frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). "'[A] medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.'" Id. (citing Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must

be clearly articulated. Phillips, 357 F.3d at 1241. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (1986).

"The ALJ may discount the treating physician's opinion if good cause exists to do so." Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). Further, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). However, if the decision of the ALJ is explained and relies on evidence in the

record it should be upheld. "We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." <u>Hunter v. Soc. Sec. Admin. Comm'r</u>, 808 F.3d 818, 823 (11th Cir. 2015).

## IV.   Legal Analysis

   A. <u>Findings of the Administrative Law Judge (ALJ).</u>

     The Court begins it analysis by first outlining the ALJ's determinations. The ALJ found that Plaintiff suffered from severe impairments: "spine disorder, right shoulder disorder, and degenerative joint disease," which "significantly limit [Plaintiff's] ability to perform basic work activities." Tr. 24. The ALJ found that Plaintiff also had a "nonsevere impairment: headaches"; however, "there is no evidence that this significantly limits [Plaintiff's] ability to perform basic work activities." <u>Id</u>. Plaintiff does not contest these findings as existing impairments. <u>Id</u>.

     However, the ALJ determined the denial of benefits was warranted. The ALJ acknowledged that Plaintiff "has no past relevant work" and "limited education."[3] Tr. 29. "Transferability of job skills [was] not an issue because the [Plaintiff] does not have past relevant work." <u>Id</u>. Still, because the ALJ determined that Plaintiff is capable of performing jobs that exist in the

---

[3] Plaintiff testified at the hearing that she did not graduate from high school. Tr. 43.

national economy, a finding of "not disabled is . . . appropriate." Tr. 30. This determination is contested by Plaintiff.

The ALJ made several other findings. Plaintiff "has not engaged in substantial gainful activity since February 11, 2016." Tr. 24. Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id., p. 24. Specifically, Plaintiff's "spine disorder does not meet Listing 1.04 for disorders of the spine because the record does not demonstrate compromise of a nerve root or the spinal cord with additional findings of . . . nerve root compression accompanied by sensory or reflex loss, and if there is involvement of the lower back, positive straight leg raising . . . spinal arachnoiditis . . . or . . . lumbar spinal stenosis resulting in pseudoclaudication." Tr. 25.

Accordingly, the ALJ determined that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)." Tr. 25. The ALJ noted: "the claimant is further limited to . . . occasionally climbing ramps, stairs, ladders, ropes and scaffolds; occasionally stooping, kneeling, crouching and crawling; and occasionally overhead reaching with the right upper extremity." Id. Moreover, "limiting the claimant to light work with additional postural limitations accounts for the claimant's spine disorder

as well as right shoulder pain, and degenerative joint disease. The additional limitation to only occasional overhead reaching further addresses the claimant's shoulder disorder." Tr. 29.

The ALJ determined "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 29. This determination was due following the consideration of the testimony of the vocational expert, "[Plaintiff's] age, education, work experience, and residual functional capacity." Tr. 30. In particular, "[t]he vocational expert testified that given all of these factors [Plaintiff] would be able to perform the requirements of . . . representative occupations: furniture rental consultant, boat rental clerk, shipping/receiving ware." Id. Finally, the ALJ determined that Plaintiff was not "under a disability, as defined in the Social Security Act, since February 11, 2016, the date the application was filed." Id.

B. Substantial evidence supports the ALJ's decision to give the opinion of Plaintiff's treating physician "little weight" regarding Plaintiff's RFC.

Plaintiff's argument that Dr. Brodsky's opinion should be given, essentially, controlling weight is rejected. First, a treating physician's opinion warrants, at most, "substantial or considerable weight"; however, "if good cause" exists, a treating physician's opinion might be completely discounted. Lewis, 125 F.3d at 1440; Hillsman, 804 F.2d at 1181. The ALJ considered the entire record in making her determinations, including Plaintiff's medical

records spanning an eight-year period. T. 25, 34-35. This Opinion discusses only those medical records which are pertinent to Plaintiff's claims.[4] They are outlined as follows: (1) Plaintiff's medical treatment prior to Dr. Brodsky – 2010-2015; (2) Plaintiff's medical treatment by Dr. Brodsky and others - 2016; and (3) Plaintiff's subsequent medical treatment and evaluations - 2017-2018.

1. *Plaintiff's Medical Treatment Prior to Dr. Brodsky - 2010-2015*

At least as far back as September 20, 2010, Plaintiff complained of low back pain. At that time, an x-ray indicated the vertebral bodies were normal in height and alignment," there was "no fracture or subluxation [or] . . . spondylolysis," and "the sacrum is normal in appearance." Tr. 341-42. Between 2012 and 2013, Plaintiff presented to the emergency room (ER) on five occasions. On **April 12**[5], **October 11**[6], and **October 15, 2012**[7], Plaintiff complained of medical conditions unrelated to this case, but the records indicated that Plaintiff had "[n]ormal range[s] of motion" in her neck and musculoskeletal system. See Tr. 271-73, 321-25, and 274-282, respectively.

---

[4] Many of the Plaintiff's medical records submitted are duplicate copies. Where that exists, the Opinion cites to both the original and duplicate copies.

[5] Martin Health System (MHS).

[6] St. Lucie West.

[7] MHS.

Then, a few months later, on **January 9, 2013**, Plaintiff returned to St. Lucie West/MHS and complained of "constant and sharp" left lower back pain "exacerbated with movement and range of motion . . . numbness of leg," but she had no difficulty walking. Tr. 282-83, 315-16. Plaintiff had "[n]ormal range of motion" and "no tenderness" in her neck and extremities but there was "mild tenderness at left paravertebral lumbar area. SLR is positive at 30 degrees on left. Negative on right. No CVA." Tr. 285, 316. An x-ray of the lumbar spine again indicated "[t]he vertebral bodies are normal in height and alignment. No compression fracture or subluxation . . . No spondylolysis . . . [t]he sacrum is normal in appearance" and the study was "normal." Tr. 292-93, 333-34. Ultimately, the "differential diagnosis considered" included "Lumbar radiculopathy and myofascial strain" with "Sciatica" as a "clinical impression." Tr. 286. Plaintiff stated her back pain improved with the medication she received during the ER visit and was discharged "with steady gait." Tr. 317.

Six months later, on **June 11, 2013**, Plaintiff sought care for her back pain, which she attributed to the use of a massage chair. Tr. 287. Plaintiff's diagnoses included "aphthosis" and "bruise of muscle." Tr. 289-90. The doctor prescribed Plaintiff medication to relieve her symptoms. Tr. 289. For the next two years, there is no record of any treatment.

In the year before Plaintiff sought treatment from Dr. Brodsky, she presented to the ER on three occasions. On **April 13, 2015**, Plaintiff presented to Tradition Hospital/MHS complaining of pain in her right wrist, shoulder, elbow, hip, knee, and ankle the result of a fall but denied any pain in her head, neck, or back.[8] Tr. 309, 371. Plaintiff had "[n]ormal range of motion" in her neck and musculoskeletal system; however, there was moderate tenderness to the lower lumbar and sacral spine as well as pain. Tr. 309-10, 372. The x-rays showed "[d]egenerative disc disease" in the lumbar spine and "degenerative changes" in the right shoulder and hips. Tr. 310, 331-32, 372-73. Plaintiff was diagnosed with multiple contusions and provided with medications to alleviate her symptoms. Tr. 311.

On **August 14, 2015**, Plaintiff presented to St. Lucie West/MHS complaining of pain in her lower back, right shoulder, and neck the result of a fall.[9] Tr. 304. "There [was] no neck pain." Id. Plaintiff described the pain as "mild to moderate" with "mild swelling." Id. The x-rays indicated "mild degenerative disk space narrowing at L5-S1" in Plaintiff's lumbar spine; and

---

[8] This record is again duplicated at Tr. 386-89.

[9] This record is again duplicated at Tr. 375-81.

Plaintiff was diagnosed with "lumbar strain." Tr. 306-08, 327-30, 349-52.

Again, Plaintiff received medications for her symptoms. Tr. 305.

On **September 16, 2015**, Plaintiff returned to St. Lucie West/MHS complaining of "pain in [her] lower back and in back of both [her] legs."[10] Tr. 300. More specifically, there was:

> gradual onset, mild to moderate, dull lower back pain . . . The pain is worse in certain positions and better with others. It increases with palpitation of the muscles of the lower back. . . There is no numbness or weakness of the distal extremities . . . There is some radiation of pain to the buttock.

Tr. 301. Though there was "mild diffuse muscular paralumbar tenderness . . . with decreased range of motion secondary to pain and stiffness," Plaintiff's neck and extremities appeared "normal" with "[p]ainless range of motion." Tr. 302. Her "motor . . . [s]trength" was 5/5 in all 4 limbs" and a "negative seated straight leg raise test." Id. "Degenerative changes" were noted on the x-ray; and Plaintiff was diagnosed with "lumbosacral strain." Tr. 303, 326-27, 347. Specifically, "[a]t the L-5-S1 level, [there was] moderate disk space narrowing and minor spurring . . . minor scoliosis," and "[d]egenerative changes [was] noted at the lower thoracic spine." Tr. 327, 348. The doctor

---

[10] This record is again duplicated at Tr. 382-85.

"stressed . . . the importance of close follow up for the back pain" and prescribed Plaintiff medications. Tr. 303-04.

On **October 29, 2015**, Plaintiff presented to St. Lucie Medical Center complaining of back pain related to a fall just two weeks earlier. Tr. 400. It was noted that Plaintiff had "decreased" range of motion in her back due to pain and a left "straight leg raise + at (30)"; she was able to walk and squat with no deficit or weakness. Tr. 401-02. The radiological report indicated "multilevel disc disease and spondylosis relatively mild in degree greatest at the L5-S1 level." Tr. 402, 406. Several months later, Plaintiff sought an orthopedic/neurological consult by Dr. Brodsky. Tr. 425.

2. *Plaintiff's Medical Treatment by Dr. Brodsky During 2016*

Over an eight-month period, Plaintiff had three consultative examinations with Dr. Brodsky.[11] Plaintiff's first appointment was five days after she initiated her disability claim, on **February 16, 2016**. Tr. 425. Plaintiff complained of "severe pain" in her lower back that "can go into both legs," as well as arm and joint pain.[12] Id. According to Dr. Brodsky, Plaintiff's ability to conduct usual activities was limited by pain. Id. Although there was

---

[11] MCBP Orthopedics and Neurosurgery.

[12] This record is duplicated at Tr. 433-37.

decreased range of motion in Plaintiff's neck, right arm, and lumbar region were noted, her gait was "intact and normal." Tr. 426-27. Dr. Brodsky diagnosed Plaintiff with spinal pathology which "may be secondary to underlying discogenic pathology." Tr. 428. Dr. Brodsky ordered an MRI of the lumbar spine. Id.

Within two weeks, on **February 27, 2016**, Plaintiff presented to Lawnwood Regional Medical Center complaining of upper back pain. Tr. 409. Her neck, however, had "full [range of motion]." Tr. 410. Plaintiff was prescribed medications to alleviate her symptoms. Tr. 415. The following day, on **February 28**, Plaintiff presented for the MRI of her lumbar spine, which indicated disc bulges and degenerative changes but "without significant spinal canal or neural foraminal stenosis" except "at the L5-S1 level there are degenerative endplate changes . . . a disc bulge with a central to left lateral recess disc extrusion/herniation, which is extending interiorly and causing moderate left lateral recess stenosis and encroachment upon the left S1 nerve root."[13] Tr. 430-31.

On **May 3, 2016**, Plaintiff returned to Dr. Brodsky who noted that "in the seated position, a positive straight-leg-lift at 45 [degrees] of flexion of the left hip . . . pain, tenderness, and spasm equally over the lumbar facets . . .

---

[13] This record is duplicated at Tr. 440-41.

right and left rotation of the neck remain[ed] limited." Tr. 438. Also, "[f]lexion and extension of the right elbow" and "forward flexion of the right shoulder" were limited. Tr. 438-39. In line with the MRI findings, Dr. Brodsky determined there was a "left disc extrusion/herniation encroaching upon the left S1 nerve root superimposed on neuroforaminal disc protrusion and herniation L4-5 with annular tear." Tr. 439. Dr. Brodsky recommended "limited activity level[s] . . . [l]imited bending and lifting" and limiting weights to no "greater than 10-15 pounds." Tr. 439.

On **September 6, 2016**, Plaintiff returned to Dr. Brodsky who noted Plaintiff was "not doing well at all . . . radiculopathy continues in the same pattern without progression" with "a positive straight leg lift . . . at 40 [degrees] of flexion of the hip." Tr. 459. Still, Plaintiff's gait was "intact and normal." Id. Dr. Brodsky's assessment remained the same; he recommended "whether it is injections or surgery, there is much more that can be done for the lower back." Tr. 460.

In contrast, on **October 24, 2016**, Dr. Brodsky completed the "Physical Capacities Evaluation" form outlining Plaintiff's condition. Tr. 446-449. Dr. Brodsky limited Plaintiff ability to lift or carry "5-10 lbs" -- a reduction from his assessment in May -- and maintained that Plaintiff could "never" perform the following postural activities: climbing, balancing, stooping, crouching,

kneeling, or crawling, rather than just "limited," as he previously opined. Tr. 446-47. Dr. Brodsky indicated on the form that Plaintiff's ability to stand, walk, and sit were affected by her impairment. Id. Specifically, standing, walking, and sitting was limited to "4-5 hours" for only "15-30 minutes" at a time "without interruption" out of "an 8-hour work day." Id. According to Dr. Brodsky, in a work setting, Plaintiff would require rest periods "every 2-4 hrs" for "15-30 minutes" at a time. Tr. 448.

### 3. Plaintiff's Subsequent Medical Treatment & Evaluations - 2016-2018

Contrary to Plaintiff's claims that she was not able to obtain treatment to provide relief for the back pain, ECF No. 1, p. 2, she made several visits to the ER for various issues, including back pain, for which she received treatment. Notably, on occasion, Plaintiff, actually reported no back pain or neck pain.

On **December 7, 2016**, Plaintiff presented to St. Lucie Medical Center complaining of intermittent back pain. Tr. 516. Plaintiff claimed that "her back . . . goes out on her" and has "pain across her lower back that . . . radiates down her legs with some numbness." Id. "Plaintiff denied any significant aggravating or relieving factors." Id. Plaintiff admitted she was diagnosed with degenerative disc disease "a few years ago" but maintained she did not have "any money or insurance to follow up with a specialist." Id. Plaintiff

denied having any pain in her extremities. Tr. 517. Still, Plaintiff's back had "[f]ull range of motion, [n]o paraspinal tenderness, [and] no muscle spasms" though she "complain[ed] of pain with movement and range of motion." Tr. 519. Plaintiff's "[m]anual muscle strength in the bilateral lower extremities is 5/5. No weakness"; and she "ambulates with a steady gait." Id. A repeated MRI did not reveal any new changes -- "focal degenerative disc changes L5-S1." Tr. 520-21. Plaintiff was treated with medications. Id.

The record contradicts Plaintiff's claims that she made "no doctor's visits in the record after December 2016," until the consultative examination in February 2018, or, alternatively, that she made "three emergency room visits . . . for unrelated injuries, but all mention her chronic back pain." ECF No. 1, p. 2 at para. 8(a). Just two months later, on **February 25, 2017**, Plaintiff returned to MHS complaining of rib- and right forearm pain resulting from a fall. Tr. 473. However, the medical record indicated "negative for back pain and neck pain"; and Plaintiff's neck had "normal range of motion." Tr. 475-76. Plaintiff's "strength and sensation were grossly intact throughout." Tr. 476. An x-ray and CT scan revealed a "rib fracture," which was apparently "old." Tr. 477, 483-84. Plaintiff was "feeling better with pain control." Tr. 477.

On **March 17, 2017**, Plaintiff presented to St. Lucie Medical Center complaining of chest pain, apparently, related to a recent fall. Tr. 505. The medical report noted that Plaintiff's neck had "full range of motion" and no tenderness. Tr. 506. Plaintiff had "full" and "[p]ainless range of motion" in her back, which was not tender; and her "straight leg raise" was negative. Tr. 507. Plaintiff also had "[f]ull range of motion" in her lower extremities. Id. No abnormality was found in the CT scan of Plaintiff's chest. Tr. 508, 512-13.

On **July 22, 2017**, Plaintiff returned to St. Lucie Medical Center complaining of left arm and chest wall pain following a fall. Tr. 493. Specifically, Plaintiff denied back or neck pain. Tr. 494. The doctor noted Plaintiff had "full range of motion" in her neck; there was "[n]o swelling" or tenderness. Tr. 495. Her right shoulder, arm, and elbow exams were "normal." Tr. 496. Plaintiff was diagnosed with sprains and contusions, but there was no fracture or abnormality. Tr. 498, 500-03.

On **December 17, 2017**, Plaintiff presented to MHS complaining of hip, knee, and rib cage pain following a fall. Tr. 461. It was noted that Plaintiff had "normal" range of motion in her neck. Tr. 464. Plaintiff's x-rays confirmed there were no abnormalities, fractures, or dislocation of her knee, hip/pelvis,

or ribs. Tr. 467-472. ECF No. 16, pp. 471-82. During this visit, Plaintiff made no complaints about any back pain. Tr. 461-472.

Related to her disability claims, on **February 26, 2018**, Plaintiff submitted to a consultative opinion by Dr. Gonzalez.[14] Tr. 456-458. Dr. Gonzalez noted that Plaintiff had full range of motion in her cervical and lumbosacral spine, though there was "midline tenderness" and "mild paraspinal muscle hypertonicity" at L5. Tr. 457. Also, Plaintiff had the full range of motion in her upper and lower limbs without any pain, "strength grossly 5/5 throughout." Id. Dr. Gonzalez considered the MRI from February 2016 and diagnosed Plaintiff with low back pain with left-sided radiculopathy, L/S spine disc disease, and cervical myositis. Tr. 458. Dr. Gonzalez recommended that Plaintiff would be able to perform gainful employment limited to avoiding lifting/pushing/pulling more than 50 pounds. Id. In the statement addressing Plaintiff's ability to perform work activities, Dr. Gonzalez opined that Plaintiff could frequently lift or carry "up to 20 lbs" but, occasionally, could do so up to 100 pounds. Tr. 450. Yet, Dr. Gonzalez limited Plaintiff's ability to stand or walk to fifteen minutes at a time without interruption and a maximum of two hours out of an eight-hour workday; Plaintiff could sit for eight hours. Tr. 451. Dr. Gonzalez did not answer the

---

[14] This physician examined Plaintiff at the request of the SSA.

question relating to what activity Plaintiff would be performing if standing and walking did not equal or exceed the eight-hour workday. Id. Dr. Gonzalez opined that, occasionally, Plaintiff could climb stairs, ramps, ladders, or scaffolds; balance; stoop; kneel; crouch; and crawl. Tr. 453.

The ALJ accorded Dr. Brodsky's opinion "little weight," but did not "disregard" it, "because it is more restrictive than indicated by his own examination findings" and "the opinion is also inconsistent with the overall record." Tr. 29. Therefore, as a matter of law, the ALJ accepted the treating physician's opinions as true. MacGregor, 786 F.2d at 1053. The statements from Dr. Brodsky conflict with his own earlier opinions and are inconsistent and not supported by other evidence in the years following his examinations. It is important to note that Dr. Brodsky is not Plaintiff's only "treating physician" -- the ER providers were Plaintiff's treating physicians and their notes include references to Plaintiff's history of chronic back pain.

The ALJ also considered the evidence of the medical consultant for the Department of Disability Services. Tr. 27-28. Dr. Lee reviewed Plaintiff's medical records and Dr. Brodsky's opinions through May 2016 and determined that Plaintiff retained the capacity for light work. Tr. 78-97. The ALJ accorded the consultant's opinion "significant weight" because the opinion is consistent with the evidence as a whole, particularly the medical

record consisting of the shoulder and lumbar spine x-rays, the results of the MRI, and Plaintiff's subsequent medical treatment demonstrating full range of motion in her neck, back, and extremities and a normal gait. Tr. 27-28. The ALJ made specific findings supporting her decision. Id. A "non-examining physician's opinion" may be entitled to "significant weight" if the opinions are supported by the evidence in the record. Forrester v. Comm'r of Soc. Sec., 455 F. Appx. 899, 902 (11th Cir. 2012). The ALJ considered the relevant medical records -- pre-consultative and post-consultative -- and "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" provided the ALJ's decision is sufficient to enable the court to conclude that the ALJ properly considered the claimant's condition as a whole. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). The Court is satisfied that the ALJ did so.

Substantial evidence supports the ALJ's decision; and she accorded the treating physician's opinion proper weight and considered numerous factors when evaluating the doctor's opinions. See 20 C.F.R. § 404.1527; Tr. 24-29. The ALJ explained the weight she gave to Dr. Brodsky's opinion with sufficient specificity to withstand judicial scrutiny. The Court may not, essentially, reweigh the evidence. Phillips, 357 F.3d at 1240 n.8. No error has been shown.

C. Substantial evidence supports the ALJ's decision to give the consultative examiner's opinion partial weight.

Contrary to Plaintiff's assertions, the ALJ afforded Dr. Gonzalez's opinion "partial weight" and did not "discount" his opinion. Tr. 28. As explained above, Dr. Gonzalez opined that Plaintiff could perform gainful employment if she avoided "lifting/pushing/pulling of more than 50 pounds," which, in the ALJ's view, was inconsistent with his own assessment of Plaintiff's limitations and the record as a whole. See Tr. 458. Dr. Gonzalez found Plaintiff to have the full range of motion in her cervical, thoracic, and lumbosacral spine with only mild tenderness and hypertonicity at L5, which is inconsistent with his postural limitations. Tr. 457. True, Dr. Gonzalez evaluated Plaintiff approximately seventeen months after her last visit with Dr. Brodsky; however, as explained above, during that period, Plaintiff also sought ER treatment on multiple occasions, which presented a relevant record for the ALJ to consider. Although "the ALJ has an obligation to develop a full and fair record," Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam), she "is not obliged to order [another] consultative examination when the record contains sufficient evidence to support a determination." Ybarra v. Comm'r of Soc. Sec., 658 F. App'x 538, 543 (11th Cir. 2016).

Plaintiff's argument that Dr. Gonzalez's opinion of Plaintiff's limitation to stand or walk for maximum of two hours per day somehow translates into the inability to engage in gainful employment, is mistaken. <u>See</u> ECF No. 18, pp. 6-7. In according Dr. Gonzalez's opinion "partial weight," the ALJ pointed out contradictions in Dr. Gonzalez's opinion because the limitations were inconsistent with a finding that Plaintiff had the full range of motion in her cervical spine, lumbosacral spine, and extremities and when compared to Plaintiff's ability to perform the basic activities of daily living and drive. Tr. 28-29. Also, the Court notes that Plaintiff's testimony provided at her hearing also supports the ALJ's decision. Specifically, Plaintiff testified that she was able to drive but did not feel comfortable doing so given her pain levels and opted to have others drive her; and when asked what she, "typically," does "during the day to pass the time," she responded that she does "a little house cleaning," "dishes . . . some laundry" and is also able to shower to relieve her pain. Tr. 47-48. Nonetheless, the ALJ is not required to cite to Plaintiff's specific testimony in order to support her rationale. The ALJ made clear that Plaintiff's testimony was considered in her final decision. Tr. 25-26.

Moreover, Dr. Gonzalez's opinions relating to Plaintiff's ability to work or her RFC are not entitled to significant weight nor are they outcome determinative. Opinions by a treating or consultative physician on issues

regarding whether a claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); see Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986); see also, supra, at n.6. Although physician's opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has responsibility of assessing the claimant's RFC. Beegle v. SSA, Comm'r, 482 F. App'x 483, 486 (11th Cir. 2012) (citing 20 C.F.R. § 404.1527(d)(2)).

This Court will not reweigh the evidence or "second guess" the weight the ALJ afforded the opinion. Bloodsworth, 703 F.2d at 1239; Hunter, 808 F. 3d at 823. Here, the ALJ accorded the consultative physician's opinion proper weight and considered numerous factors when evaluating his opinion. See 20 C.F.R. § 404.1527; Tr. 24-29. More importantly, the ALJ explained the weight with sufficient specificity to withstand judicial scrutiny. No error has been shown.

## V.    Conclusion

Considering the record, as a whole, the findings of the ALJ are based upon substantial evidence in the record; and the ALJ correctly applied the law. Accordingly, the decision of the Commissioner to deny Plaintiff's application for Social Security disability benefits is **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment for the Defendant.

IN CHAMBERS at Tallahassee, Florida, on October 30, 2020.

**s/ Martin A. Fitzpatrick**_____
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**